**AT&T COMMUNICATIONS OF MICHIGAN, INC.,**
Plaintiff,

v.

**MICHIGAN BELL TELEPHONE COMPANY d/b/a Ameritech Michigan, Inc., and The Commissioners of the Michigan Public Service Commission, in their Official Capacity and not as individuals, Defendants.**

Nos. 97–CV–60018–AA,
97–CV–60176–AA.

United States District Court,
E.D. Michigan,
Southern Division.

March 19, 1998.

Sidney M. Berman, George Hogg, Jr., Arthur J. LeVasseur, Fischer, Franklin, Detroit, MI, for AT&T Communications, Inc., plaintiff.

L. Michael Wicks, United States Attorney's Office, Detroit, MI, for United States of America, Federal Communications Commission, intervenor.

Joseph A. Fink, Edward R. Becker, Dickinson, Wright, Lansing, MI, Bruce R. Byrd, Dickinson, Wright, Detroit, MI, for Michigan Bell Telephone Company, dba Ameritech Michigan, Incorporated, defendant.

Sidney M. Berman, George Hogg, Jr., Arthur J. LeVasseur, Fischer, Franklin, Detroit, MI, for AT and T Communications of Michigan, Incorporated, plaintiff.

Joseph A. Fink, Edward R. Becker, Dickinson, Wright, Lansing, MI, Bruce R. Byrd, Dickinson, Wright, Detroit, MI, for Michigan Bell Telephone Company, dba Ameritech Michigan, Incorporated, defendant.

Don L. Keskey, David A. Voges, David M. Gadaleto, Michigan Department of Attorney General, Lansing, MI, for Michigan Public Service Commissioners, in their official capacity and not as individuals, defendant.

*ORDER DISMISSING CASE NO. 97–60018 AND DENYING DEFENDANT MPSC COMMISSIONERS' MOTION TO DISMISS CASE NO. 97–60176*

HACKETT, District Judge.

The above-captioned cases arise under the Telecommunications Act of 1996, 47 U.S.C. § 252(e)(6) (the Act), which authorizes this court to determine whether the interconnection agreement between AT & T Communications of Michigan, Inc. (AT & T) and Michigan Bell Telephone Company d/b/a Ameritech Michigan, Inc. (Ameritech) arbitrated and approved by the Commissioners of the Michigan Public Service Commission (MPSC) complies with the Act. Now before the court is the Commissioners' motion to dismiss plaintiff's claims as to the Commissioners. For the following reasons, their motion shall be denied.

## I. *FACTS*

Through the Telecommunications Act of 1996, Congress enacted a new subchapter of the Communications Act of 1934, 47 U.S.C. §§ 251–261, that is designed to foster "rapidly" the development of competition in local telephone markets. However, Congress recognized that incumbent monopolist providers of local telephone service, such as Ameritech, have strong economic incentives to delay and impede the introduction of competition in the local exchange markets. Hence, Congress imposed specific obligations on the incumbents, requiring them to give new competitors immediate access to the facilities they need to enter the market. Specifically, the Act mandates that potential competitors be allowed to "interconnect" with the incumbent's networks, *id.* § 251(c)(2); to purchase access to "unbundled elements" of those networks, *id.* § 251(c)(3); and, to resell services currently sold by incumbents such as Ameritech. *Id.* § 251(c)(4).

The Act further directs incumbents to negotiate "interconnection agreements"

with new entrants to fulfill their duties under the Act, *id.* § 251(c)(1), and § 252 of the Act creates an important, yet voluntary, role for state commissions arbitrating and reviewing those interconnection agreements. If such negotiations are unsuccessful, either party may petition a state commission to arbitrate open issues. *Id.* § 252(b)(1)–(2). The Act does not require state commissions or their commissioners to participate in this new federal scheme.[1] Rather, if a state commission opts not to conduct the arbitration, the Federal Communications Commission (FCC) must do so. *Id.* § 252(e)(5). If a state commission conducts the arbitration, it must ensure that the terms and conditions imposed upon the parties comply with the Act and the FCC's rules. *Id.* § 252(c)(1).

The Act instructs that agreements adopted through arbitration or negotiation be submitted to the state commission for review, and the commission may then approve the agreement or reject it if it is inconsistent with the Act. *Id.* § 252(e)(1)–(2). If the commission fails to act, the agreement will be deemed approved. *Id.* § 252(e)(4). Once a state commission has approved or rejected an interconnection agreement, "any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement ... meets the requirements of section 251 of this title and this section." *Id.* § 252(e)(6).

In the present case, plaintiff AT & T served defendant Ameritech with a request for negotiation pursuant to the Act on February 27, 1996. For either party to avail itself of the Act's arbitration process before a state commission, a petition for arbitration must be filed after the 135th day but before the 160th day after the date of the original negotiation request. AT & T complied with this provision and filed a petition for arbitration with the Michigan Public Service Commission on August 1, 1996. Ameritech also filed a petition for arbitration on August 2, 1996, and the MPSC subsequently consolidated the separate petitions into a single arbitration proceeding and appointed an arbitration panel to consider the issues raised by the parties.

On October 28, 1996, the arbitration panel issued its first decision and required the parties to submit exceptions to the MPSC by November 7, 1996. On November 26, 1996, the MPSC issued an order approving agreement adopted by arbitration. That order directed that a complete copy of the interconnection agreement, as adopted by the arbitration panel and as modified by the MPSC, be filed within 10 days. On December 26, 1996, Ameritech filed a disputed version of the interconnection agreement with the MPSC. Because it was uncertain whether the MPSC's November 26, 1996, order constituted final approval of the parties' interconnection agreement, AT & T filed its first complaint in this court on January 24, 1997, which was assigned case number 97–60018.[2]

After the MPSC's November 26, 1996, order, AT & T and Ameritech filed five agreements, each of which contained disputed provisions.[3] Consequently, MPSC staff initiated discussions with AT & T and Ameritech regarding the unresolved issues. The MPSC staff then filed recom-

---

1. *Cf. New York v. United States,* 505 U.S. 144, 176, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (invalidating legislative provision "compelling [states] to enact and enforce a federal regulatory program").

2. Case no. 97–60018, however, must be dismissed because it was filed prior to the MPSC's April 4, 1997, order approving the parties' final agreement and seeks the court's premature review of the arbitration process. Although AT & T suggests that the court consolidate the two cases and "proceed on the basis of the second complaint, reviewing the Agreement as approved by the MPSC's April 4, 1997 Approval Order," the court finds no reason to maintain the first case on its docket when there is no agreement at issue in that complaint for the court to review.

3. The five disputed agreements were submitted on December 6, 1996; December 26, 1996; January 14, 1997; January 16, 1997; and, January 29, 1997. Only the January 29, 1997, agreement was signed by both parties, but even it included disputed language.

mendations concerning resolution of the outstanding disagreements. AT & T and Ameritech filed responses to the recommendations, and on February 28, 1997, the MPSC issued an opinion and order adopting staff's recommendations and requiring the parties to submit a signed copy of the interconnection agreement. On March 7, 1997, AT & T and Ameritech jointly submitted a fully executed agreement. On the same date, Ameritech filed a motion for approval of the agreement. On April 4, 1997, the MPSC issued an order approving the interconnection agreement between the parties, and on May 5, 1997, AT & T filed its second complaint, which was assigned case number 97–60176.

In its complaint, AT & T asserts that the interconnection agreement and the MPSC's order violate the Act and FCC regulations by not requiring Ameritech to provide a particular telecommunication service (Counts I and II). Counts III and IV allege a controversy between AT & T and Ameritech and request that the court resolve questions regarding the parties' rights and obligations under the agreement. AT & T named as defendants both Ameritech and the MPSC Commissioners, in their official capacity.

The MPSC Commissioners have filed a motion to dismiss plaintiff's claims against them, arguing that (1) the court lacks subject matter jurisdiction over an action against state officials; and, (2) the complaint fails to state a claim on which relief can be granted against state officials. The court now turns to the Commissioners' motion.

## II. *STANDARD OF REVIEW*

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on an issue of law. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a Rule 12(b)(6) motion, a court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'r and Assoc., Inc. v. West Bloomfield Tp.,* 922 F.2d 328, 330 (6th Cir.1990).

## III. *DISCUSSION*

The Commissioners contend that they should be dismissed as defendants because the Act only authorizes the court to review the agreement between AT & T and Ameritech that the Commissioners arbitrated and approved to see if it complies with the Act, and that such limited authorization does not extend to jurisdiction over an action against the Commissioners. This argument lacks merit. The Act makes no mention about who is a proper party to suit. As long as nothing outside the statute prohibits naming the Commissioners as defendants, they are clearly proper parties to a proceeding which will examine whether an agreement they arbitrated and approved complies with the Act that they undertook to apply. For the reasons stated hereafter, the court finds that nothing outside the Act mandates the Commissioners' dismissal from suit. Furthermore, naming the Commissioners as defendants is essential to ensuring that AT & T receives all of the potential relief to which it is entitled, including that the MPSC properly apply the federal Act in Michigan.

The Commissioners maintain that the Tenth and Eleventh Amendments to the United States Constitution require their dismissal from suit. The specific arguments raised by the Commissioners in support of their motion are not novel. Over the course of the last year, these same arguments have been advanced throughout the nation by various state public utility commissions and rejected every time.[4]

**4.** *See, e.g., U.S. W. Communications, Inc. v. Public Serv. Comm'n of Utah,* 991 F.Supp. 1299 (D.Utah 1998); *US W. Communications, Inc. v. TCG Seattle,* 971 F.Supp. 1365 (W.D.Wash.1997); *Michigan Bell Tel. Co. d/b/a Ameritech Mich. v. Climax Tel. Co.,* No. 5:97–CV–197 (W.D.Mich. Feb. 13, 1998); *AT & T Communications of the S. States, Inc. v.*

Pursuant to the reasoning expressed in these earlier decisions, this court determines that neither the Tenth nor the Eleventh Amendment bars the action brought by AT & T against the MPSC Commissioners under § 252(e)(6) of the Act.

■ More specifically, the court first holds that the Commissioners are not protected by the Tenth Amendment because the Act does not mandate their participation in the federal program. Rather, the Act offers states the option of implementing the regulatory scheme or declining to do so. Thus, the MPSC Commissioners voluntarily chose to act here, and absent coercion of a state's legislative processes, there can be no Tenth Amendment violation.

■ As to the Commissioners' Eleventh Amendment arguments, the court finds that an action for judicial review under § 252(e)(6) of the Act is not a "suit in law or equity" against the state, and therefore does not raise Eleventh Amendment concerns. Moreover, even if this case was a "suit" for purposes of the Eleventh Amendment, jurisdiction over the MPSC Commissioners would nonetheless be proper under *Ex parte Young*, in which the Supreme Court recognized that the Eleventh Amendment does not bar lawsuits that seek to enjoin state officials in their official capacity from prospective violations of federal law. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[5] Contrary to the Commissioners' contention, the Su-

preme Court's decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), does not work to avoid the clear-cut application of *Ex parte Young.* Although the Court in *Seminole Tribe* held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young,*" *id.* at 74, 116 S.Ct. 1114, the Act at issue here does not present such a detailed remedial scheme.

Furthermore, the applicability of *Ex parte Young* in this case is all the more clear in light of Justice Kennedy's Eleventh Amendment analysis in *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). Affirming the "continuing validity of the *Ex parte Young* doctrine," Justice Kennedy emphasized that the *Young* rule has "special significance" when "there is no available state forum." *Id.* at 2034–35. There is "no state forum available to vindicate" a telecommunication carrier's claim that an interconnection agreement violates the Act. *See* 47 U.S.C. § 252(e)(4). Therefore, ensuring the MPSC Commissioners' prospective compliance with the Act in this forum is a proper invocation of *Ex parte Young.*

■ Moreover, even if the court were to conclude that this action implicates the

*BellSouth Telecommunications, Inc.,* No. 1:97–cv–884–RCF (N.D.Ga. Feb. 11, 1998); *BellSouth Telecommunications, Inc. v. Tennessee Regulatory Auth.,* No. 3:97–0523 (M.D.Tenn. Feb. 11, 1998); *US W. Communications, Inc. v. MFS Intelenet, Inc.,* 35 F.Supp.2d 1221 (D.Or.1998); *AT & T Communications of the S. Cent. States, Inc. v. BellSouth Telecommunications, Inc.,* No. 97–79 (E.D.Ky. Dec.15, 1997); *AT & T Communications of the S. States, Inc. v. BellSouth Telecommunications, Inc.,* No. 3:97–2164–17, 1997 WL 1133454 (D.S.C. Dec. 11, 1997); *AT&T Communications of So. States, Inc. v. BellSouth Telecommunications Inc.,* No. 4:97cv262–RH, 1997 WL 1133450 (N.D.Fla. Nov. 21, 1997); *AT & T Communications of*

*the S. States, Inc. v. BellSouth Telecommunications, Inc.,* No. 5:97–CV–425–BR (E.D.N.C. Nov. 20, 1997); *GTE S., Inc. v. Morrison,* No. 3:97CV493 (E.D.Va. Nov. 7, 1997); *U.S.W. Communications, Inc. v. Hix,* No. 97–D–152 (D.Colo. Oct. 29, 1997); *USW. Communications, Inc. v. Thoms,* No. 4–97–CV–70082 (S.D.Iowa Aug. 4, 1997); *USW. Communications, Inc. v. Reinbold,* No. A1–97–25 (D.N.D. July 28, 1997).

**5.** The doctrine espoused in *Ex parte Young* applies to threatened violations of both constitutional and statutory law. *See, e.g., Cory v. White,* 457 U.S. 85, 89, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).

Eleventh Amendment, and that the doctrine of *Ex parte Young* does not authorize the court to direct the Commissioners to abide by the requirements of the Act, there is yet a third ground for denying the Commissioners' motion to dismiss: The Commissioners waived the right to invoke any constitutional claims of sovereign immunity by voluntarily choosing to conduct the arbitration and implement the federal scheme set forth in §§ 251 and 252 of the Act. A state waives its Eleventh Amendment immunity by voluntarily participating in a federal program if the waiver arises from " 'such overwhelming implication from the text as [will] leave no room for any other reasonable construction.' " *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). Here, the MPSC voluntarily injected itself into a regulatory scheme in the face of clear and unambiguous language that, upon completion of the arbitration and approval process, federal district court review would ensue. The "overwhelming implication" of the MPSC's conduct demonstrates a waiver of any Eleventh Amendment immunity.

■ The Commissioners' arguments in support of dismissal regarding the doctrines of exhaustion of administrative remedies and primary jurisdiction are equally unavailing. The Commissioners claim that the FCC, pursuant to its authority under 47 U.S.C. § 208(a), can grant the relief requested by AT & T, and that AT & T should thus be required to exhaust that remedy before the FCC, or alternatively, that this court should refer to the FCC's primary jurisdiction. However, the Eighth Circuit recently held that an action under § 252(e)(6) such as this one "is the exclusive means to attain review of state commission determinations under the Act," and that "Congress did not intend to allow the FCC to review the decisions of state commissions," because "nothing in the Act even suggests that the FCC has the authority to enforce the terms of negotiated or arbitrated agreements." *Iowa Util. Bd. v. FCC*, 120 F.3d 753, 804 (8th Cir.1997), *cert. granted,* —— U.S. ——, 118 S.Ct. 879, 139 L.Ed.2d 867 (1998). Accordingly, the doctrines of exhaustion of remedies and primary jurisdiction do not apply here.

■ Finally, the MPSC Commissioners allege that the Johnson Act, 28 U.S.C. § 1342, provides additional support for the proposition that they are not proper parties to this action. The Johnson Act bars federal courts from asserting jurisdiction to "enjoin, suspend or restrain the operation of, or compliance with" state utility rate making orders when all four of the act's conditions are met. The first condition under the Johnson Act requires that jurisdiction be based solely on diversity of citizenship or federal constitutional grounds. However, AT & T's challenge to the MPSC's order arises under a federal statute. Second, the Johnson Act applies only if "[a] plain, speedy and efficient remedy" is available in state court. Here, the Telecommunications Act explicitly bars state courts from determining whether interconnection agreements comply with the Act. 47 U.S.C. § 252(e)(4). Because at least two of its requirements are not satisfied, the Johnson Act has no application to this case.

## IV. CONCLUSION

For the reasons stated above, defendant MPSC Commissioners' motion to dismiss hereby is DENIED.

SO ORDERED.